IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

KENDARIUS D. MOSS, )
 )
    Plaintiff, )
 )
v. ) CASE NO. 3:17-cv-456-SRW
 )
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
 )
    Defendant. )

# **MEMORANDUM OPINION AND ORDER**[1]

Plaintiff Kendarius Moss commenced this action on July 11, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner denying his application for disability insurance benefits and Supplemental Security Income ("SSI"). *See* Doc. 1; Doc. 12. In his applications, plaintiff alleged disability as of June 1, 2014, because of a gunshot to the right flank area, bilateral leg weakness, bullet in the left upper breast area, chronic back pain with drainage bag, and drainage bag for kidneys. *See* R. 149, 153, 175. On July 6, 2016, Administrative Law Judge Frank M. Klinger ("the ALJ") issued an adverse decision after holding a hearing on October 8, 2015, on the plaintiff's application.[2] *See* R. 20–27, 33–53. The Appeals Council denied plaintiff's

---

[1] For the purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

[2] Attorney Brian Carmichael appeared with the plaintiff at the hearing before the ALJ, and he is plaintiff's counsel of record before this court. R.33; Doc. 12.

1

request for review on May 17, 2017, and the ALJ's decision became the final decision of the Commissioner. *See* R. at 1–5.

In the instant appeal, the plaintiff asks the court to reverse the Commissioner's adverse decision and award benefits or, in the alternative, remand this cause to the Commissioner under sentence four of 42 U.S.C. § 405(g). *See* Doc. 12 at 13. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c); *see also* Docs. 10, 11. For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be affirmed.

In addition, the plaintiff moves for an award of reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 241(d). *See* Doc. 12 at 13. Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), the plaintiff also requests an extension of time to file a motion for attorney's fees under 42 U.S.C. § 406(b). *See id*. These motions will be denied.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant

2

evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for SSI and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by

3

medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ'S DECISION

The ALJ first found that it was unclear whether the plaintiff had engaged in substantial gainful work since June 1, 2014, the alleged onset date, because he received over $7,000 in self-employment income in 2014. R. 22. The ALJ concluded that plaintiff's statement that he "filed for self-employment," but did not have work, made no sense and was not credible. *Id.* At step two, the ALJ determined that plaintiff suffers from the severe impairments of status-post gunshot wounds to the chest; abdomen/pancreas/colon/kidney/splenic fixture; and diaphragmatic injury with adhesions status-post colostomy and closure with backache and other pain. *Id.* The ALJ next concluded that the plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 23. The ALJ stated that he considered all of the plaintiff's impairments individually and collectively in determining the plaintiff's residual functional capacity ("RFC"). *See* R. 23–25.

The ALJ made the following RFC determination:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except the claimant can perform a full range of light work exertionally but a full range of sedentary work positionally: to wit he can only stand/walk for up to two hours and can sit for up to six hours in an eight-hour day.

R. 23. At step four, the ALJ found that plaintiff has no past relevant work. R. 25–26. Given plaintiff's age, experience and RFC, the ALJ determined at step five, with the assistance of vocational expert ("VE") testimony, that there were jobs that exist in significant numbers in the national economy that the plaintiff could perform. R. 26–27. Specifically, the VE identified representative jobs such as document preparer, product assembler, and sealer. R.

27. The ALJ's findings resulted in a determination that the plaintiff "has not been under a disability … since June 1, 2014, through the date of the decision." *Id*.

## ADMINISTRATIVE HEARING

Plaintiff was 23 years old at the time of the administrative hearing held October 8, 2015. R. 37. He testified that he has a tenth grade education and lives at his mother-in-law's home with his wife and two daughters who are three years old and eight months old. R. 37–38. He and the grandmother take care of the two children when his wife works. R. 38. He helps around the house by watching the children, and doing some grocery shopping and a little dishwashing and cooking. R. 39.

Plaintiff denies working since his alleged onset date of June 1, 2014, but records show that he did have self-employment earnings of $7,400 in 2014. R. 39-40. He testified that he worked as a cook for several fast-food restaurants in 2012 and 2013, including Wendy's and Checkers. R 42–43.

Plaintiff testified that he is unable to work because he has a bullet in his neck sitting over his heart. R. 43. It causes his back to "blow up." R. 43. He was the victim of a gunshot wound in 2014. R. 44. He experiences pain in his neck going all the way down his back and into his legs. R. 44. He describes the pain as a sharp pain rushing through his body. R. 46. Because of his injury, he had to wear a colostomy bag for a year which affects his daily activities. R. 45. He explains that when he perspires, it falls off and overflows. R. 45. He has to have two or three bags with him when he is out somewhere because sometimes it overflows in public. R. 46.

Plaintiff can sit upright in a chair for 30 to 60 minutes before having to lie down on his side. R. 46. He can walk 20 to 30 minutes before needing to take a break. R. 47. He cannot walk or stand for prolonged periods because of his left side. R. 47.

He testified that he recently acquired health insurance after his surgery, but his treatment prior to that time was limited due to his lack of ability to pay. R. 47. Now that he has insurance, he has an upcoming appointment with a pain specialist. R. 47–48.

The ALJ next took testimony from a vocational expert who classified plaintiff's past work as fast food worker, performed across exertional levels from light to heavy. R. 49. Based upon a hypothetical assuming a full range of light work, the VE testified that the individual could not do plaintiff's past relevant work as performed. R. 49–50. In the second hypothetical, the VE was asked to assume that the individual could perform light work exertionally but sedentary work positionally, where the individual is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently and needs to spend up to 6 hours per day sitting and no more than 2 hours walking or standing. R. 50. Based on this second hypothetical, the VE identified sedentary jobs such as document preparer, product assembler, and sealer that were available in the national economy and could be performed by the hypothetical individual. R. 51. If the plaintiff's testimony were fully credited, the VE testified that sustained competitive employment would be precluded. R. 51.

## ISSUES ON APPEAL

The plaintiff raises two arguments in support of this appeal: (1) "the ALJ erred by improperly acting as both Judge and medical doctor"; and (2) "the ALJ failed to properly consider/reject [plaintiff's] testimony regarding the effects of his colostomy bag upon his

ability to work." Doc. 12 at 3. The Commissioner maintains that the decision should be affirmed because the ALJ applied proper legal principles and her decision is based on substantial evidence. *See* Doc. 13. The court agrees with the Commissioner.

## DISCUSSION

As noted above, plaintiff raises two issues on appeal. In sum, he contests the ALJ's RFC and credibility findings. Regarding both issues, plaintiff contends that the ALJ failed to consider appropriately and credit his testimony regarding the limitations caused by his colostomy bag.

In his first argument, plaintiff challenges the ALJ's RFC finding, contending that the ALJ improperly acted as both judge and doctor. Plaintiff submits that the RFC determination was made based upon the ALJ's hunch as opposed to medical reasoning. He argues that the ALJ failed to explain how plaintiff can effectively lift, carry, walk, push or pull while wearing a colostomy bag. Plaintiff contends that although the ALJ acknowledged the lack of medical assessment in the record, he chose instead to impose his own medical evaluation. Plaintiff argues that the ALJ had an obligation to consider the effects of treatment, including the limitations associated with wearing a colostomy bag, and the ALJ erred in failing to do so.

"The [RFC] is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 416.945(a) (a person's RFC "is the most you can still do despite your limitations"). The RFC assessment must be based on all of the relevant evidence in the case record, including the plaintiff's medical history;

laboratory findings; the frequency, duration and side effects of treatment; plaintiff's daily activities; recorded observations; medical source statements; effects of symptoms, including pain; and work attempts or evaluations. *See* SSR 96-8P, 1996 WL 374184 at *5 (July 2, 1996). The RFC assessment must include a discussion in which the ALJ "explain[s] how any material inconsistencies or ambiguities in the evidence of the case record were considered and resolved." *Id.* at *7. The final responsibility for deciding a claimant's RFC is with the ALJ. 20 C.F.R. §§ 404.1527(d), 416.927(d).

After consideration of the entire record, the ALJ found that plaintiff has the RFC for a full range of light work exertionally, but a full range of sedentary work positionally. R. 23. Plaintiff argues that the ALJ erred in not discussing his testimony about the problems with his colostomy bag. While plaintiff is correct that the ALJ did not specifically mention his testimony about the colostomy bag, the ALJ did not ignore the issue altogether as suggested by plaintiff. Moreover, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision, so long as the ALJ's decision" enables us "to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation omitted). Here, the ALJ specifically references the medical evidence regarding plaintiff's colostomy bag, including that it was functioning well upon plaintiff's discharge following surgery and that it was successfully removed in June 2015. In discussing the evidence supporting his RFC assessment, the ALJ made the following observations:

> The objective evidence shows that the claimant sustained a gunshot wound to the left flank in June of 2014. Some complications included fluid collection around the pelvis and pancreas, and his colon, among other

things, required repair. However, the claimant was released from the hospital within thirty days of being shot with his condition specifically being noted as stable and has done well since that time - post-operatively did fairly well. In fact, the discharge records show that his colostomy bag was functioning well, that his pain had resolved, and that his hypertension was appropriately controlled with medication.

The claimant's follow-up care into 2015 was sporadic at best, and there was no record of him requiring physical therapy or frequent hospitalizations for pain. As well, his colostomy bag was removed in June of 2015 without any serious complications, and he was even noted as ambulating well before being discharged home. However, his physical examinations best demonstrate his ability to perform at a reduced range of light [work] to include lifting up to twenty pounds occasionally. This is due in part to those examinations not always being remarkable. Moreover, even when he has complained of difficulties to include back pain, his musculoskeletal examinations generally showed him to have normal motor strength and tone, no edema, and normal extremity movement.

As well, the claimant's functional capacity was not reduced by obesity, and the most recent records revealed him to have a full range of lower extremity motion with no swelling. Therefore, that evidence, along with him not being prescribed an assistive device for ambulation, warrants a light exertional level finding. However, to better account for his testimony of pain and difficulties with activities of daily living, the undersigned will positionally restrict the claimant to only standing/walking for up to two hours and sitting for up to six hours in an eight-hour day.

R. 24 (citations omitted). The ALJ notes that the post-operative records reflect that plaintiff's colostomy bag was functioning well, he was ambulating well, and despite his complaints of back pain, his physical exams revealed normal motor strength and tone. *See id.; see also* R. 382 (colostomy bag functioning well); 406 (no muscle aches or weakness); 407 (no acute distress, ambulating normally); 408 (normal tone and motor strength, normal movement of extremities, normal mood and affect, active and alert); 410 (ambulating normally); 418 ("done well" since colectomy and colostomy, did fairly well following

uneventful colostomy closure). The ALJ discussed the generally unremarkable physical findings, as well as the dearth of treatment. Of note, there are no emergency room visits for complaints regarding the colostomy bag. Additionally, the ALJ considered the plaintiff's testimony and administrative filings related to his activities, including his ability to care for his children and do some household chores. *See* R. 38 (takes care of children); 39 (shops a little for groceries, does a little washing dishes and cooking); 193 (takes care of his child every chance he gets); 194 (changes diapers, cleans a little); 195 (able to pay bills, handle financial accounts, and use checkbook).

While the ALJ found that the medical evidence supported a light exertional finding, he accounted for plaintiff's pain complaints and difficulties in daily living activities by assessing positional limitations. *See* R. 24. The plaintiff fails to direct the court to any objective medical findings demonstrating greater limitations than those assessed. "[T]he task of determining a [plaintiff's RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). The ALJ's RFC findings are based on substantial evidence that is cited and discussed in the ALJ's written decision. While the plaintiff disagrees with the ALJ's factual findings, this court cannot reweigh the evidence and is limited to determining whether there is substantial evidence to support the Commissioner's decision. *See Dyer*, 395 F.3d at 1210. Based on the court's careful scrutiny of the record, it concludes that the ALJ's decision with regard to the RFC is based on substantial evidence and the Commissioner's decision is due to be affirmed.

Plaintiff next argues that the ALJ erred in failing to credit his testimony regarding the effects of his colostomy bag on his ability to work. In this circuit, to demonstrate that pain or symptoms of an underlying medical condition render him disabled, a plaintiff must satisfy what has come to be known as the "pain standard." *Mack v. Comm'r of Soc. Sec.*, 420 F. App'x 881, 883 (11th Cir. 2011); *see also Vonboeckman v. Colvin*, 2014 WL 6239598, at *5 (N.D. Ala. Nov. 13, 2014); Social Security Regulation 96-7p (SSR 96-7p), 1996 WL 374186 (July 2, 1996). Under that standard, the plaintiff must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

In making his credibility determination here, the ALJ found that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 23. The ALJ explained:

> With respect to the [plaintiff's] statements, the undersigned must find that they are not entirely consistent with or supported by the record. This is due in part to the medical records generally showing him to be

> doing fairly well post-surgery. He was ambulating well, his ostomy site was healing well, and he was even characterized as healthy appearing, well nourished, and well developed and in no acute distress (5F/3; 6F/2, 21). His testimony of intense pain is inconsistent with him not requiring frequent hospitalizations for pain when he had no insurance and could not afford primary care; and it is equally inconsistent for him to report significant back, neck, and leg pain while his physical examinations have generally been unremarkable (see administrative record).

R. 24. Thus, the ALJ articulated several reasons for discrediting plaintiff's subjective complaints. *See* R. 24; *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).

The ALJ found that plaintiff's complaints and testimony about his symptoms and their limiting effects was not supported by the medical evidence of record, and conflicted with other record evidence about his daily activities. *See* R. 24–25. The ALJ's decision analyzed and discussed the medical evidence of record. S*ee id.* The ALJ also noted that plaintiff's complaints of disabling symptoms were inconsistent with the record evidence showing infrequent hospitalizations for breakthrough pain or symptoms, unremarkable physical examinations, and a well-healed colostomy site. *See* R. 24. The Eleventh Circuit has stated that an ALJ may properly consider a claimant's course of "conservative" treatment as evidence that contradicts a claimant's subjective complaints of disabling symptoms. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). "A doctor's conservative medical treatment for a particular condition tends to negate a claim of

disability." *Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) (citing *Wolfe*, 86 F.3d at 1078).

Plaintiff's primary complaint is the ALJ's failure to address his testimony regarding the limitations associated with his colostomy bag. As discussed above, the ALJ did address the medical evidence of record related to plaintiff's colostomy bag. *See* R. 24. Plaintiff argues that the opinion in *Pearman v. Astrue*, No. CIV A1:08-cv-219-TFM, 2008 WL 4767723, at *3 (M.D. Ala. Oct. 30, 2008), is instructive because that court found reversible error where the ALJ found the claimant could return to his prior work in construction, despite his testimony that his colostomy bag becomes loose when he becomes sweaty. Because plaintiff similarly testified that his colostomy bag slips off when he perspires, he submits that the ALJ should have accounted for the limitations resulting from this condition. However, plaintiff's allegations about the bag's coming loose does not undercut the ALJ's decision regarding plaintiff's ability to work because the jobs that the ALJ found plaintiff could perform are indoor jobs, unlike the construction job performed by the *Pearman* plaintiff.

As it must, the court has carefully scrutinized the record, and it concludes that the ALJ's credibility determination is based on substantial evidence that is cited and discussed in the ALJ's written decision. *See* R. 23–25. Because the ALJ articulated specific reasons supporting his conclusion that plaintiff's statements are less than credible, the decision is due to be affirmed on this issue.

**CONCLUSION AND ORDER**

Upon consideration of the parties' briefs and the record, the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be **AFFIRMED** by a separate judgment.

In addition, it is hereby

**ORDERED** that the plaintiff's motion for an award of EAJA fees and motion for an extension of time to file a motion for an award of attorney's fees pursuant to 42 U.S.C. § 406(b) are **DENIED**. *See* Doc. 12.

Done, on this the 11th day of March, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge